UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

UNITED STATES OF AMERICA,

                        Plaintiff,              13 Cr. 724

        -against-                               OPINION


AUSTIN ROMAIN,

                        Defendant.

------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-1-14

Attorney for the Government

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, NY  10007
By:  Martin S. Bell, Esq.
     Russell Capone, Esq.



Attorney for Defendant

THE BLANCH LAW FIRM, P.C.
261 Madison Avenue, 12th Floor
New York, NY  10016
By:  Brad L. Henry, Esq.

**Sweet, D.J.**

Defendant Austin Romain ("Defendant" or "Romain"), has moved to suppress all evidence derived from the search by the Government of two cell phones ending in numbers -3636 and -2171 (the "Cellphones") pursuant to the Fourth Amendment of the United States Constitution.

For the reasons set forth below, Defendant's motion is denied.

**Procedural History & Facts**

The facts and prior proceedings in this action are set forth in this Court's prior decision and order dated April 10, 2014, familiarity with which is assumed.  (See Dkt. No. 29.) Facts relevant to this motion are stated below.

The New York City Department of Investigation ("DOI") and the Drug Enforcement Agency ("DEA") have been investigating the Defendant since 2012.  The DOI and DEA claim that Defendant and another individual abused their positions as corrections officers at Riker's Island, the site of ten correctional facilities that house inmates charged with committing felony

1

crimes in New York City.  (Strafaci Aff. ¶ 7.)  Defendant served

as a Corrections Officer between August 2007 until his arrest on

or about June 17, 2013.  Id.  Two cellphones were taken from the

Defendant during his arrest.  Id. at 2.


     On October 3, 2014, DEA Agent Strafaci ("Agent

Strafaci") submitted an application for a search warrant

("Application") regarding the two cellphones that had been in

Defendant's possession at the time of his arrest.  The

cellphones were described in the Application as "two cellphones

in the custody of the DEA in New York, NY, including a Verizon

Samsung flip-phone with Hex#A0000030E12E04," and "a white Apple

iPhone," which had been inventoried by the DEA "as Exhibit N-4

and N3 respectively."  (Appl. 1.)  The Application's supporting

affidavit ("Affidavit") defined the Cellphones as "two cellular

telephones . . . presently in the possession of the DEA in New

York, New York . . . [which] were seized in connection with

arrest of Austin Romain."  (Strafaci Aff. ¶ 2.)[1]  The Affidavit

later noted that a person believed to be the Defendant used

"multiple cellular phone numbers, including numbers with call

---

[1] An additional reference to the Cellphones identifying the Cellphones as
"(2Title)" was, according to the Government, the result of a computer error.
(See Gov't Opp'n 2 n. 1.)

numbers ending in 1695 . . . and 3636 . . . ."  (Strafaci Aff. ¶ 12.)

The cover of the Application stated that the search was related to a violation of "21 §§ 841 and/or 846," described as "[m]arijuana distribution and conspiracy" and stated the basis for the search as "evidence of a crime" and "property designed for use, intended for use, or used in committing a crime."  (Appl. 1.)  The Application incorporated, by reference, the entirety of the criminal complaint with which the defendant was originally charged ("Criminal Complaint").  Together, the Application and the Criminal Complaint articulated a series of facts briefly summarized as follows:

- The Defendant and another individual, charged separately, abused their positions as Corrections Officers by selling marijuana and tobacco to inmates at the facilities at which they worked.

- According to multiple human sources of information and phone records, the Defendant used multiple cellular phone numbers in order to carry on the drug-related scheme, including setting up narcotics-related meetings and wire payments.  The communications included oral conversation and text messages with several identified numbers used by Romain.  The cellular phone numbers included phone numbers ending with -3636 and -1695.

- The Defendant, upon arrest, was in the possession of two cellular phones, to wit, the Cellphones.

- It is common for individuals involved in the drug
  trade to possess cellular telephones, maintain the
  names and contact information of criminal associates
  on those telephones, use multiple cellular phones in
  order to avoid concentrating incriminating evidence
  in a single phone.  It is also common for modern
  phones to contain a vast array of types of
  information, including voice mail, text messages,
  recent call activity, contacts, photographs, and
  separate communication by way of specialized
  programs or "apps."

The Application sought a list of items from each of
the Cellphones to be reviewed and seized, including: any and all
telephone numbers and/or direct connect numbers, including those
assigned to the Cellphones, caller identification information,
call log information, address information and other
identification information, voicemail messages, texts, emails
and photographs and app program contents.  (Appl. Attach. A; see
also Warrant Attach. A.)


The Court reviewed the Application and issued the
search and seizure warrant ("Warrant") on that same day, which
identified as items to be reviewed and seized those which
derived from "two cellular telephones seized in connection with
the arrest of Austin Roman [sic] on or about June 17, 2013,
described further as (1) a Verizon Samsung flip-phone cellphone
Model #SCH-U365 with serial number Hex#A0000030E12E04,
(inventoried as Exhibit N-4 by the DEA); and (2) a white Apple

4

iPhone in a black case (inventoried as Exhibit N-3 by the DEA)

(collectively, the "CELLPHONES"), presently in the custody of

the DEA in New York, New York . . . ."  (Warrant Attach. A.)

The Warrant authorized the search and seizure of:

> 1. Any and all telephone numbers and/or direct
>    connect numbers, including those assigned to
>    the CELLPHONES;
>
> 2. Any and all caller identification information;
>
> 3. Any call log information;
>
> 4. Any information about recently called numbers,
>    recently received calls, and recently missed
>    calls;
>
> 5. Any address information or other identification
>    information; and
>
> 6. Any and all voicemail messages, alpha-numeric
>    ("text") messages, emails, and photographs;
>
> 7. Any and all contents of programs or "apps";
>    that are contained in the computerized memory
>    and/or electronic storage facilities for the
>    CELLPHONES.

Id.  The list was identical to that attached to the Application

as "Attachment A."  However, the Warrant did not reference or

incorporate the Application or its supporting documents.


     Following the issuance of the Warrant, the Government

executed a search of both Cellphones.  It did so by running a

program that can either create a physical dump of all the

contents of the phone for additional review, or by segregating all contents of a certain type (text messages, pictures, etc.) for additional review.  The program generated a report for each of the Cellphones, which was provided to Defendant's counsel. The Government asserts that the search of the Cellphones uncovered items including but not limited to the following:

- Pictures of one of the Defendant's alleged inmate co-conspirators, apparently taken within Riker's Island.

- Text messages with another co-conspirator outside of Riker's Island concerning money transfers and a search.

- The existence of an app used to simulate the existence of a separate phone with the -1695 number.

- Confirmation that one of the Cellphones was, in fact, the -3636 number.

The Government represents that the report did not include items beyond those listed in the Warrant.  (See Gov't Opp'n 4.)


On October 17, 2014, the Government ran another forensic report the Cellphone ending in -2171, which included all recoverable information contained on that Cellphone.

**Applicable Law**

The Fourth Amendment requires warrants to describe "the place to be searched, and the persons or things to be seized" with particularity.  U.S. Const. amend. IV.  The clause "protects against a general, exploratory rummaging in a person's belongings" and "ensure[s] that 'those searches deemed necessary should be as limited as possible.'"  United States v. Metter, 860 F. Supp. 2d 205, 212 (E.D.N.Y. 2012); see also United States v. Zemlyansky, 945 F. Supp. 2d 438, 452 (S.D.N.Y. 2013).  "As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."  United States v. Buck, 813 F.2d 568, 590-91 (2d Cir. 1987) (quoting Marron v. United States, 275 U.S. 192, 196 (1927)).

When a warrant violates the Fourth Amendment, the evidence resulting from the deficient warrant may be suppressed. United States v. Rosa, 626 F.3d 56, 64 (2d Cir. 2010).  However, exclusion of evidence depends on the "efficacy of the rule in deterring Fourth Amendment violations in the future."  Id. Exclusion is a "last resort, not [a] first impulse" – the benefits of deterrence must outweigh the costs and the conduct of the government must be "sufficiently culpable that such

7

deterrence is worth the price paid by the justice system."

Herring v. United States, 555 U.S. 135, 144 (2009).


**The Defendant's Motion To Suppress Is Denied**


Defendant argues that: (1) the search and seizure of
the Cellphone ending in -2171 was unconstitutional because no
probable cause existed to search it, (2) alternatively, the
Warrant was facially overbroad and wrongly authorized the
seizure of the items as to which there was no showing of
probable cause, (3) the Warrant was an unlawful general warrant
that gave rise to an unlawful general search, and (4) the manner
of the search was unreasonable.[2]


### 1. There Was Sufficient Probable Cause To Search The Cellphones


Defendant contends that the Government's extraction of
data from the Cellphone ending in -2171 was unconstitutional

---

[2] Defendant argued in his initial memorandum that the searches of the
Cellphones were unconstitutional because they occurred before the Warrant was
issued for the search.  (Def.'s Mem. 4-6.)  Subsequently, the Government
contacted Defendant's counsel to indicate that the Warrant was signed on
October 3, 2014 and not October 7, 2014 as the Defendant originally believed.
(Gov't Opp'n 2 n.2; Def.'s Reply 1.)  Defendant deferred to the Court's
recollection as to this particular argument. (Def.'s Reply 1.)  The Warrant
was indeed signed on October 3, 2014, as reflected above in the recitation of
facts relevant to the instant motion.

because the Affidavit does not make mention of the -2171 phone in connection with a crime.  In other words, Defendant asserts that the Government did not tie the Cellphone ending in -2171 to the alleged offenses for which a search is warranted and, as such, the search of the Cellphone ending in -2171 was improper.

However, neither the Application nor the Warrant identifies or defines the Cellphones according to their final four digits.  Both identify and define the Cellphones as those which were seized in connection with the arrest of the Defendant, notwithstanding the fact that the Application makes mention of certain four digit extensions as those used by the Defendant, "including" extensions -1695 and -3636, but does not mention -2171.  (Strafaci Aff. ¶ 2; Warrant Attach. A.)  The Application and its supporting documents presented facts indicating that the Defendant, who was arrested with multiple cellphones on his person, used multiple cellphones to communicate orally and via text message with co-conspirators throughout the duration of the alleged conspiracy, and that such conduct tends to leave evidence of the conspiracy on the phones themselves.

The relevant inquiry then is whether the two Cellphones taken from the Defendant were reasonably likely to contain evidence of the crimes described given the facts in the Application, not whether either phone matched a particular extension mentioned in the Affidavit. See Illinois v. Gates, 462 U.S. 213, 238 (1983) (requiring a showing of "a fair probability that contraband or evidence of a crime will be found"). The Government's Application sufficiently lays out a sound basis from which to conclude that the Cellphones would contain evidence of wrongdoing. See United States v. Singh, 390 F.3d 168, 182 (2d Cir. 2004) (quoting Buck, 1986 WL 12533, at *4) (noting that the nexus between the items sought and the particular place to be searched "may be based on 'reasonable inference' from the facts presented based on both common sense and experience.") (internal quotation marks omitted). Thus, there was probable cause to search both Cellphones, including the one ending in -2171.

### 2. The Good Faith Exception Applies To Defendant's Contentions That The Warrant Was Overbroad And Failed To Meet The Particularity Requirement

Defendant contends that the Warrant is facially deficient because it lacks any articulation of a particular

criminal offense and because the Affidavit used in support of
the Application was not also appended to the Warrant.  (Def.'s
Mem. 10-11.)  Defendant further contends that because each of
the seven paragraphs in "Attachment A" of the Warrant call for
the search and seizure of "any and all" items described in each
respective paragraph, the "all" modifier renders the Warrant
impermissibly overbroad.  (Def.'s Mem. 10-11, 13-15.)

Particularity and overbreadth are "two distinct legal
issues."  Zemlyanksy, 945 F. Supp. 2d at 450.  Defendant
asserts that because the Warrant failed to reference a criminal
offense by failing to incorporate the Application and its
supporting documents, the Warrant was insufficiently particular
because it failed to provide an adequate factual basis on which
to limit the scope of the search.  Defendant also asserts, in
tandem to his particularity argument, that the language used in
the Warrant was impermissibly broad.

In order to determine whether a warrant is
sufficiently particular, Courts must ask whether the warrant
"enable[s] the executing officer to ascertain and identify with
reasonable certainty those items that the magistrate has
authorized him to seize."  United States v. George, 975 F.2d 72,

11

75 (2d Cir. 1992). "All data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath." United States v. Falso, 544 F.3d 110, 122 (2d Cir. 2008) (internal quotation marks omitted). Relying on a document outside of the four corners of a warrant is insufficient, unless the warrant "uses appropriate words of incorporation, and . . . the supporting document accompanies the warrant." Groh v. Ramirez, 540 U.S. 551, 557 (2004); see also Rosa, 626 F.3d at 62-65; United States v. Bianco, 998 F.2d 1112, 1116 (2d Cir. 1993) abrogated by United States v. Galpin, 720 F.3d 436 (2d Cir. 2013) (a warrant must identify the specific offense for which the police have established probable cause). Specifically, in order to satisfy the Fourth Amendment's particularity requirement, a warrant must (1) identify the specific offense for which the police have established probable cause, (2) describe the place or places to be searched, and (3) specify the items to be seized by their relation to a designated crime. Galpin, 720 F.3d at 445-46. A particularized warrant "prevents the seizure of one thing under a warrant describing another." Buck, 813 F.2d at 590-91.

It is undisputed that the Warrant neither referenced a criminal statute nor the Application or its supporting documents and that this constitutes a deficiency. (See Hr'g Tr. 10:16-17 ("The government does not contend that [the lack of a reference to the crime] isn't a problem. It is.").) The Warrant on its face does not satisfy the first prong of the particularity analysis. Thus, the relevant question is not whether the Warrant is insufficiently particular, because it is, but rather whether, in this context, the exclusionary rule should apply to evidence obtained as a result of the execution of the Warrant, or whether the "good faith exception" applies to the Government's conduct.

The exclusionary rule mandates that "[s]uppression is required when (1) there is a widespread seizure of items not covered by the warrant and (2) agents do not act in good faith." United States v. Ganias, 755 F.3d 125, 140 (2d Cir. 2014). In making their determination, Courts must take care to weigh the benefits of deterrence against the costs of suppression. Id. (citing Herring, 555 U.S. at 141).

Evidence "obtained in objectively reasonable reliance on a subsequently invalidated search warrant" can constitute a

13

good faith exception to the exclusionary rule.  United States v. Leon, 468 U.S. 897, 922 (1984).  There are four circumstances under Leon, however, in which a good faith exception would not apply: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable."  Galpin, 720 F.3d at 452 (citing United States v. Moore, 968 F.2d 216, 222 (2d Cir. 1992)).  "The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance."  Ganias, 755 F.3d at 136 (quoting United States v. Voustianiouk, 685 F.3d 206, 215 (2d Cir. 2012)) (internal quotation marks omitted).

      The Government's actions in this case do not foreclose the application of the good faith exception.  There is no indication, and the Defendant does not allege, that either of the first two Leon triggers would apply.  Additionally, as discussed above, there was sufficient probable cause to support the Application, thus rendering the third Leon trigger also inapplicable.

With respect to the fourth Leon trigger, while the
Warrant suffered a deficiency by virtue of failing to make
reference to a criminal statute, this fact alone need not
mandate suppression.  Although courts "may no longer rely on
unincorporated, unattached supporting documents to cure a
constitutionally defective warrant, those documents are still
relevant to our determination of whether the officers acted in
good faith, because they contribute to our assessment of the
officers' conduct in a particular case."  Rosa, 626 F.3d at 64.
As in Rosa, the Application and its supporting materials were
submitted, the Warrant was issued, and the searches executed in
close temporal proximity: the Application was submitted, the
Warrant was signed, and one of the searches was conducted all on
the same day.  The other search occurred three days later.  (See
Def.'s Mem. 3-4;[3] Gov't Opp'n 2-3.)  The Application and its
supporting documents made clear that the purpose of the seizure
of the Cellphones was to obtain evidence of "offenses involving
the distribution of, and possession with intent to distribute,
one or more controlled substances, and/or conspiracy to do the

---

[3] As noted above, the Court confirms that the Warrant was signed October 3,
2014, contrary to the assertions made by Defendant in his initial motion
papers.

15

same, in violation of 21 U.S.C. 841 and/or 846 . . . ."

(Strafaci Aff. ¶ 6.)


Additionally, the same "Attachment A" which listed the

"Items to Be Reviewed and Seized" which was submitted with the

Application was also appended to the Warrant.  The Government

asserts that because of the nature of the items being searched,

the generation of the report by the agents would have been the

same even if the Warrant had made specific reference to the

statute or Application and its supporting documents.  In either

case, the Government furthers, the agents would have to run the

same program that generates the same report of the entirety of a

physical dump of the phone or the entirety of the categories

included in the "Items to be searched" list -- the process

requires searching the entire contents of the authorized

categories on the Cellphones in order to determine which items

could be seized.  In its opposition papers and at the

suppression hearing, the Government averred that the

Government's team did not search items other than what it would

have searched had the Warrant referenced the statute.  The

Government also represented at the hearing that the agents

reviewing the generated reports were looking only for "relevant" evidence.[4]

In this case, the search was executed pursuant to a judicially authorized warrant.  The Application and its supporting documents made clear that the purpose of the warrant was to find evidence of specific criminal offenses -- that is, the narcotics and narcotics conspiracy statutes.  The Warrant's omission of an incorporation of the Application and the supporting documents does not, in the absence of any other indicia of deficiency or bad conduct, indicate "flagrant" or "culpable" conduct on the part of the Government as to require deterrence.  Here, as in Rosa, because there is no evidence or allegation that the Government "actually relied on the defective warrant, as opposed to [its] knowledge of the investigation and the contemplated limits," as articulated in the Application and its supporting documents, the requisite levels of deliberateness and culpability justifying suppression are lacking.  See Rosa, 626 F.3d at 66.  As such, relying on the representations by the Government as to its agents' conduct, suppression appears to be

---

[4] "[GOVERNMENT]: . . . What happened after the search was done was that we took the fruit of that search, the report generated by our in-house investigator detailing the contents of the phone and we disclosed that in its entirety to Mr. Henry, something that made sense to do, something that's in line with the office's general practice and then we went through the phone and attempted to find -- went through that report and attempted to find relevant evidence."  (Hr'g Tr. 11:10-17, Nov. 19, 2014.)

inappropriate in this context.  See Herring, 555 U.S. at 147-48

("In light of our repeated holdings that the deterrent effect of

suppression must be substantial and outweigh any harm to the

justice system, we conclude that when police mistakes are the

result of negligence . . . rather than systemic error or

reckless disregard of constitutional requirements, any marginal

deterrence does not 'pay its way.'"); Rosa 626 F.3d at 65 n.3

(suppression of physical evidence on the basis of a clerical

error "would be incompatible with the principles underlying the

exclusionary rule").


     Apart from maintaining that the Warrant was

insufficiently particular, Defendant contends that the Warrant

was overbroad in scope.  In order to determine whether a warrant

is overbroad, Courts must ask "whether the warrant authorized

the search and seizure as to which there is no probable cause."

United States v. Lustyik, No. 13 CR 616, 2014 WL 4802911, *11

(S.D.N.Y. Sept. 29, 2014) (citing United States v. Dupree, 781

F. Supp. 2d 115, 148 n. 14 (E.D.N.Y. 2011)).  In other words, a

warrant is overbroad if its "description of the objects to be

seized . . . is broader than can be justified by the probable

cause upon which the warrant is based."  Galpin, 720 F.3d at 446

(internal quotation marks omitted).

18

Defendant asserts that the use of "any and all" renders the Warrant overbroad because it "authorize[s] nothing less than a wholesale seizure of Mr. Romain's records and communications with everyone regardless of whether they were linked to any crime." (Def.'s Mem. 10-11.) Courts in this circuit, however, have acknowledged the difference between the manner in which searches and seizures may be executed of electronic files as opposed to physical objects. Notably, the Honorable Alison J. Nathan recently explained:

> The Supreme Court recognized long ago that searching for files is not like searching for tangible objects, because it is impossible to know whether a given file contains relevant evidence without looking at it. See Andersen v. Maryland, 427 U.S. 463, 482 n. 11 (1976). ("In searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized.")  The same is true with computer hard drives, and [...] e-mail accounts. See United States v. Bowen, 689 F. Supp. 2d 675, 682 (S.D.N.Y. 2010) ("In a search for electronic documents such as e-mails, 'the actual content of a computer file usually cannot be determined until it is opened with the appropriate application software on a computer' or until each file is analyzed by a program capable of searching the files for specific content." (quoting United States v. Lamb, 945 F. Supp. 441, 458 (N.D.N.Y. 1996))).

United States v. Barnes, 13 Cr. 387, slip op. at 11-12 (S.D.N.Y.
Oct. 21, 2013).  Indeed, the Second Circuit has confirmed that
the creation of "mirror images" or, in this case, the generation
of a report of the entire contents of a cellphone "is
constitutionally permissible in most instances, even if
wholesale removal of tangible papers would not be."  Ganias, 755
F.3d at 135.  Defendant does not appear to dispute this practice
of initial search, but rather contends that the Warrant is
overbroad because it does not specify the items to be "seized"
in relation to a particular crime.  (Hr'g Tr. 21:14-18 ("I think
there's case law about e-mails and computers and those things
where you can search everything.  We don't have a problem with
that but they can't seize everything and they have.").)

        Defendant cites to Metter to support his assertion
that the "all" modifier renders a search impermissibly broad
specifically in cases regarding electronically stored data
because it would allow the seizure of data without a
determination of its relevance.  (See Def.'s Mem. 11.)
Defendant's reliance on Metter, however, is misplaced and
premature.  In Metter, the defendant's motion to suppress
evidence was granted when the government sought the "retention
of all imaged electronic documents . . . without any review

20

whatsoever to determine [] their relevance." <u>Metter</u>, 860 F. Supp. 2d at 213. At issue in <u>Metter</u> was how long the Government might "retain seized and imaged electronic evidence before conducting a review of that evidence to determine whether any of it falls outside the scope of a search warrant." <u>Id.</u> at 212. Indeed, while there are many reasons why a comprehensive seizure and subsequent search through information retrieved from media such as computers or cellphones is warranted, there exists no "'independent basis' for retaining any electronic data 'other than [those] specified in the warrant.'" <u>Ganias</u>, 755 F.3d at 136. The review of data is still subject to the rule of reasonableness.

However, although the Second Circuit has emphasized that unreasonable retention of irrelevant data can present a critical problem, there is no defined time period in which the Government must segregate the data responsive to the Warrant from the unresponsive, though some recent case law has outlined the broad contours of what is considered reasonable. <u>Ganias</u>, 755 F.3d at 136; <u>see also</u>, <u>Metter</u> 860 F. Supp. 2d at 215 ("[U]nder current law there is no established upper limit as to when the government must review seized electronic data to determine whether the evidence seized falls within the scope of

a warrant . . . . Numerous cases hold that a delay of several
months between the seizure of electronic evidence and the
completion of the government's review of that evidence as to
whether it falls within the scope of the warrant is
reasonable."). Here, the time which has elapsed is not equal to
nor does not even closely approximate the retention periods
found to be unreasonable by courts in this circuit. See
generally Ganias, 755 F.3d at 137-41 (Government retention of
documents for two and a half years was unreasonable); Lustyik,
2014 WL 4802911, at *15 ("here . . . the government had the
[data] for only three months before re-reviewing them"). In
effect, the Government has not yet "seized" the information.
Thus, Defendant's contention that the evidence retrieved from
the Cellphones must be suppressed because the Government has
retained unresponsive data for too long (see Def.'s Reply 5
("the non-responsive material from the searches has been kept
continuously by the government and is subject to unlimited and
repeated searches") must be denied.


     Defendant also relies on the Galpin decision to argue
that the Warrant is overbroad, asserting that the clauses in the
Warrant here resemble the language of the warrant in Galpin,
which was found to be overbroad. (Def.'s Mem. 10.) However,

22

Galpin is readily distinguishable.  In Galpin, the search warrant in question was issued pre-indictment and evidence seized as a result of the warrant was apparently used to charge the defendant with multiple charges, all but one of which were not the crimes for which probable cause had been established when the warrant was issued and on which the warrant was based. The more basic failing of the Warrant -- that of the omission of a cross reference to the Application or its supporting documents --renders the Warrrant insufficiently particular, but it does not also make the Warrant "overbroad" so much as it causes the Warrant to lack grounding or definition.  Assuming a good faith reliance on and guidance from the Application, the language would not be overbroad as the Application lays out sufficient description as to what time of incriminating evidence is sought. That aside, to the extent the language of the Warrant is overbroad, the good faith exception would still apply.  Because of the nature of the material being seized, the search of the Cellphones would initially been necessarily over inclusive and there is no indication of culpability or deliberateness, save for the Government's presumably clerical errors in preparing the Warrant.  The Second Circuit has made clear: "in a doubtful case, [courts] accord preference to the warrant." United States v. Irving, 452 F.3d 110, 125 (2d Cir. 2006) (citation omitted).

23

### 3. The Manner Of The Search Was Reasonable

Defendant contends, in conjunction with his arguments regarding overbreadth, that the manner in which the Government executed the Warrant did not comport with the Fourth Amendment's reasonableness standard. Specifically, Defendant asserts that because the Warrant did not provide any protocol to govern and limit the search, the search "became an all-encompassing dragnet of personal information to be seized." (Def.'s Mem. 16.)

As discussed above, because of the nature of the property, specifically, the contents of the Cellphones, such a comprehensive seizure was warranted and the subsequent search to identify items relevant to the Warrant is adequately limited by the parameters articulated in the Application and its supporting documents. Moreover, the Second Circuit has "not required specific search protocols or minimization undertakings as basic predicates for upholding digital search warrants." Galpin, 720 F.3d at 451; Lustyik, 2014 WL 4802911, at *12. "[I]n the absence of controlling precedent requiring search protocols, it cannot be said the agents acted in bad faith." Lustyik, 2014 WL 4802911, at *12 (citing United States v. Clark, 638 F.3d 89, 105 (2d Cir. 2011) and Buck, 813 F.2d at 593 for the proposition

24

that when the law is unsettled as to a set of requirements

pertaining to a warrant, the exclusionary rule does not apply).[5]


**Conclusion**


Defendant's motion to suppress is denied for the

reasons set forth above.  Trial is set for December 8, 2014.


It is so ordered.


**New York, NY**
**December  1 , 2014**

Robert W. Sweet
U.S.D.J.

---

[5] Defendant contends in his reply that the Government failed to "describe the
use of a second program to recover additional data from the 2171 Phone at a
date 11 days after the first search without obtaining a second warrant for a
further search."  (Def.'s Reply 2.)  Although the Government disputes the
characterization of the use of the second program as a search (see Letter
from Martin S. Bell (Nov. 12, 2014)), at hearing and in its subsequent
letter, the Government represented that it does not need to use the results
of the second program.  As such, the issue is moot.  Were it not moot,
however, the second "search" of the -2171 phone appears to be the functional
equivalent of a "review" and is permissible.  See, e.g., Lustyik, 2014 WL
4802911, *15.